UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KEVIN BERNARD DAVIS | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:18–CV–00188 |
| | § | |
| MATAGORDA COUNTY, ET AL. | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM AND RECOMMENDATION**

Before the Court is (1) Defendant Matagorda County's Motion to Dismiss (Dkt. 30); (2) County Commissioner James Gibson's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 31); (3) Defendant, William David Anders', *in his official and individual capacities*, Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6) and Based on Qualified Immunity (Dkt. 32); and (4) Defendants', County Commssioner [sic] James Gibson, *Individually*, and William David Anders, *Individually*, Joint Motion to Stay Discovery Pending a Ruling on their Entitlement to Qualified Immunity and For Protective Order ("Defendants' Joint Motion to Stay Discovery") (Dkt. 33). These motions were referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1). Dkt. 60.

Having considered the parties' briefing and the applicable legal authorities, the Court recommends that: (i) the First Amendment retaliation claim brought against William David Anders ("Anders") be dismissed because he is entitled to qualified immunity; (ii)

the race discrimination claim brought against County Commissioner James Gibson ("Commissioner Gibson") under Section 1981 be dismissed;[1] (iii) the hostile work environment claim[2] brought against Commissioner Gibson under Section 1981 be dismissed; (iv) Defendants' Joint Motion to Stay Discovery be denied as moot; and (v) in all other respects, Defendants' motions to dismiss be denied.

## BACKGROUND[3]

Plaintiff Kevin Davis ("Davis"), an African American man, is a former employee of Matagorda County (the "County")[4] in the Precinct 3 Road and Bridge Maintenance crew. He served in that role from May 2015 until his termination in February 2018. Commissioner Gibson is the elected County Commissioner for Precinct 3. Anders was the

---

[1] Anders and Commissioner Gibson urge this Court to dismiss all claims brought against them in their official and individual capacities. In Plaintiff's Original Complaint, Davis alleged claims against Anders and Commissioner Gibson in their official and individual capacities. *See* Dkt. 1. Davis subsequently filed an amended pleading, which removes the language asserting claims against Anders and Commissioner Gibson in their official capacities. *See* Dkt. 28. Thus, the First Amended Complaint's claims against Anders and Commissioner Gibson are brought in their individual capacities. There are no live claims brought against Anders or Commissioner Gibson in their official capacities that are subject to dismissal. If such claims were asserted, dismissal would certainly be appropriate. *See Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 417 (5th Cir. 2018) (dismissing official capacity claims because "suits against officials in their official capacities generally represent only another way of pleading an action against an entity of which an officer is an agent") (internal quotation marks and citation omitted).

[2] In the First Amended Complaint, Davis fluctuates between referring to this claim as a race harassment claim and hostile work environment claim. In the interest of clarity, the Court chooses to simply refer to the claim as a hostile work environment claim.

[3] Davis attached 24 exhibits to the First Amended Complaint. The Court considers those documents to the extent they enhance the allegations in the First Amended Complaint. To the extent that they could be construed against Davis's claims, the Court declines to make such inferences in deciding the instant motions to dismiss.

[4] The Court refers to the County, Anders, and Commissioner Gibson collectively as "Defendants."

Precinct 3 foreman who served as Davis's direct supervisor during his employment with the County.

Davis alleges that during his tenure with the County he was subjected to a workplace permeated with discriminatory intimidation, ridicule, and insult, all based on his race. He contends that Anders and Commissioner Gibson were both aware of, participated in, and encouraged others to participate in creating this hostile work environment. According to the First Amended Complaint, Davis complained about the conditions of his employment both internally and externally, evidenced by his filing of a criminal complaint against Anders, who he alleges threatened his life. Davis further alleges that notwithstanding his many complaints about being subjected to a hostile work environment and race discrimination, his complaints failed to net any corrective actions from the Defendants. After discovering that Commissioner Gibson mishandled certain County assets held in the "Kitty Fund," Davis filed a complaint with the Texas Rangers. Based on his many complaints about the conditions of his employment and his revelation that Commissioner Gibson mishandled County assets, Davis alleges that Commissioner Gibson wrongfully terminated his employment.

Given these allegations, which are more fully described below and in the First Amended Complaint, Davis filed suit against the County, Anders, and Commissioner Gibson, alleging the following claims: race discrimination, hostile work environment, and First Amendment retaliation. Defendants separately moved to dismiss.

## MOTION TO DISMISS STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This pleading standard does not require "detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). Under Rule 12(b)(6), a party may "move for dismissal for a failure to state a claim upon which relief can be granted." *Lemieux v. Am. Optical Corp.*, 712 F. App'x 409, 412 (5th Cir. 2018) (internal quotation marks omitted). "The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Lowrey v. Tex. A&M Univ. Syst.*, 117 F.3d 242, 247 (5th Cir. 1997) (citation omitted).

Dismissal is appropriate "when a plaintiff fails to allege sufficient facts that, taken as true, state a claim that is plausible on its face." *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011) (citation omitted). However, "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks and citation omitted). "Determining whether the plausibility standard has been met is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

# DAVIS'S SECTION 1983 CLAIMS

Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  It is fundamental to understand that Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  To recover under Section 1983, Davis must show that he has been deprived of a right guaranteed by the Constitution or the laws of the United States.  *See Daniels v. Williams*, 474 U.S. 327, 330 (1986) ("[I]n any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct may not be enough to state a claim.") (collecting cases).  Davis has identified three such rights.

Davis first asserts that Defendants subjected him to race discrimination and a hostile work environment in violation of the Fourteenth Amendment's Equal Protection Clause.[5]

---

[5] In his responses to Defendants' motions to dismiss, Davis also makes a race retaliation claim in violation of the Equal Protection Clause.  *See, e.g.,* Dkt. 41 at 19 (arguing Matagorda "violated Plaintiff's constitutional rights to be free from race based discrimination, harassment and retaliation"); Dkt. 44 at 9 (arguing Commissioner Gibson "violat[ed] . . . Plaintiff's Constitutional rights to be free from discrimination, harassment, retaliation and unfair treatment based on race under the Fourteenth Amendment and 42 U.S.C. 1981"); Dkt. 59 at 6 (arguing Anders "violat[ed] . . . Plaintiff's Constitutional rights to be free from discrimination, harassment, retaliation and unfair treatment based on race under the Fourteenth Amendment and 42 U.S.C. 1981").  In the First Amended Complaint, however, Davis alleges only race discrimination and hostile work

Davis also asserts that Defendants subjected him to race discrimination and a hostile work environment in violation of his rights under 42 U.S.C. § 1981, which provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Finally, Davis asserts that Defendants retaliated against him for engaging in protected speech under the First Amendment. Simply stated, the First Amended Complaint alleges these claims via Section 1983 against all Defendants: (i) race discrimination (Section 1981 and Equal Protection Clause);[6] (ii) hostile work environment (Section 1981 and Equal Protection Clause); and (iii) retaliation (First Amendment).

The Court addresses each party's arguments in turn.

---

environment violations of the Equal Protection Clause. *See* Dkt. 28 at 20–23. Thus, Davis seems to be attempting to allege a new claim through his responses.

Even if the Court allowed such an amendment at this late hour, Davis's claim would fail because "no cause of action exists for retaliation under the Equal Protection Clause of the Fourteenth Amendment." *Fisher v. Dallas Cty.*, No. 3:12-CV-3604-D, 2014 WL 4797006, at *9 (N.D. Tex. Sept. 26, 2014) (internal quotation marks omitted) (collecting cases). *See also Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ( "[W]e know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination."); *Jackson v. Mississippi*, No. 5:12CV94-DPJ-FKB, 2012 WL 5185726, at *2 (S.D. Miss. Oct. 18, 2012) ("the Equal Protection Clause does not preclude workplace retaliation") (collecting cases).

[6] It is not entirely clear to the Court whether Davis intended to bring a race discrimination claim independent of his hostile work environment claim. In his First Amended Complaint and throughout his briefing, Davis seems to use the word "discrimination" and "harassment" interchangeably. This is problematic because race discrimination and hostile work environment are two separate claims, with different elements. The Court will err on the side of caution and interpret the First Amended Complaint as asserting a race discrimination claim and a separate hostile work environment claim.

# THE COUNTY'S ARGUMENTS

The County advances several arguments in its motion to dismiss. First, the County seeks dismissal of the entire First Amended Complaint, arguing that Davis failed to plausibly plead facts to establish county liability. Second, the County contends that the case should be dismissed because Davis failed to state a prima facie case for each of his claims. Third, presumably because the First Amended Complaint contains a section titled "Application for Preliminary Injunction," the County argues against Davis's entitlement to such injunctive relief. Lastly, in an abundance of caution, the County argues "[i]f the Court does not otherwise dismiss Plaintiff's claims for the reasons outlined above, the Court should abstain from hearing arguments in this case" pursuant to the *Colorado River* abstention doctrine. Dkt. 30 at 41.

## A.   COUNTY LIABILITY

A county may be held liable under Section 1983 only when the county itself causes a constitutional deprivation. *See Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). To properly plead county liability under Section 1983, a plaintiff must allege three elements: (1) a policymaker; (2) an official policy or custom; and (3) a violation of a constitutional right who moving force is the policy or custom. *See Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). A county may not be held strictly liable for the acts of its non-policymaking employees under a *respondeat superior* theory. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 817–18 (1985). However, the Fifth Circuit has held that, under *Monell*, "a single decision may create municipal liability **if that decision were made by a**

**final policymaker responsible for that activity**." *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996) (quoting *Brown v. Bryan Cnty.*, 67 F.3d 1174, 1183 (5th Cir. 1995)) (emphasis in original). In such cases, the first and second elements of the Section 1983 analysis essentially merge because "if a municipal official engages in isolated unconstitutional conduct, and if that official has 'final policymaking authority to establish municipal policy with respect to the conduct that resulted in a violation of constitutional rights,' then that isolated unconstitutional conduct will be considered an official municipal policy for purposes of section 1983 municipal liability." *Ezell v. Wells*, No. 2:15-CV-00083-J, 2015 WL 4191751, at *16 (N.D. Tex. July 10, 2015) (quoting *Brown*, 67 F.3d at 1182)).

Here, Davis specifically alleges that Commissioner Gibson, who ultimately terminated Davis's employment, is a final policymaker of Precinct 3 with respect to the subject matter involved in each of his claims.[7] *See* Dkt. 28 at 21, 24. In support of his allegation, Davis points to several written policies that he claims empowers Commissioner Gibson to create policies within the employment context, and contends that Commissioner Gibson engaged in unconstitutional conduct constituting the official policies of the County. As Davis succinctly stated:

> Plaintiff's Complaint pleads facts and evidence that a policy, custom and practice of race based discrimination, retaliation and harassment was followed in Precinct 3, as well as a policy and custom of inaction, indifference, ratification, all under the direction and participation of

---

[7] Davis also alleges that "some or all" of six other individuals he lists might also be final policymakers. *See* Dkt. 28 at 22 ("the County Commissioners Court, County Judge McDonald, County Attorney Fortenberry, County Sheriff's Office, County Human Resources – Ginger Iovanna and Carmen Andrews, . . . some or all of whom were final policymakers").

Commissioner Gibson and with the actual and constructive knowledge of county officials. The Complaint pleads that through this custom and practice, Plaintiff was subjected to racial slurs, racist jokes, threats to the person and property of African American and Hispanic employees, disparate job assignments, unwarranted disciplinary action against Plaintiff, and was an eventual cause in bringing about the decision to terminate Plaintiffs' employment.

Dkt. 41 at 25 (internal citations omitted). The County disputes Commissioner Gibson's status as a policymaker, forcefully arguing that the Commissioners Court is the actual policymaker and the specific policies offered by Davis do not actually empower Commissioner Gibson to create policy.

The Court has reviewed the authorities offered by both parties and is unconvinced that Commissioner Gibson cannot, under any circumstances, be a policymaker. The Supreme Court has cautioned that

the power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level. *Monell*'s language makes clear that it expressly envisioned other officials whose acts or edicts may fairly be said to represent official policy, and whose decisions therefore may give rise to municipal liability under § 1983.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (internal quotation marks and citations omitted). The record currently before the Court does not offer a definitive picture regarding state law, all relevant policies, and Commissioner Gibson's policymaking power. In other words, the Court does not now possess an adequate record to decide the policymaker inquiry. Assuming that Commissioner Gibson is a policymaker, as alleged in the First Amended Complaint, his actions may well constitute the official policy of the County therefore satisfying the first and second prongs of the municipal liability analysis. If Commissioner Gibson's actions constitute the official policy of the County, the third

prong of county liability is easily satisfied because the First Amended Complaint alleges that Commissioner Gibson made the final decision on Davis's termination based on those same policies. *See, e.g., Lott v. Forrest Cty., Miss.*, No. 2:14-CV-131-KS-MTP, 2015 WL 7015315, at *10 (S.D. Miss. Nov. 10, 2015) ("Because Sheriff McGee made the final decision on Lott's suspension and termination, Lott's claim does not fail under a *Monell* analysis."). As a result, at this time, Davis's claims against the County survive under *Monell*.

## B.   PRIMA FACIE CASE

The County next argues that Davis failed to plead facts supporting each element of the various causes of action. The Court will examine each claim.

### 1.      Hostile Work Environment

Under the Fifth Circuit's hostile-work environment test, Davis must show that

> (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Caldwell v. Lozano*, 689 F. App'x 315, 322 (5th Cir. 2017) (brackets and citation omitted). "A hostile work environment exists when the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Johnson v. Halstead*, 911 F.3d 267, 274 (5th Cir. 2018) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Davis sufficiently alleges sustained harassment that undermined his ability to work. Davis alleges that Anders was the Precinct 3 foreman and his direct supervisor, and the

County's complaint procedure requires employees to submit their complaints to their supervisor (Anders) and department head (Commissioner Gibson). He further alleges that Anders, Commissioner Gibson, and certain other co-workers "used the word 'n---er'" in [his] presence . . . on a routine, customary basis." Dkt. 28 at 8. For example, he alleges:

> Defendant Gibson, Anders and certain co-workers called and referred to Plaintiff as "n---er," "f---ng n---er," "damn n---er," "stupid n---er." For example, on one occasion when Plaintiff accidentally stuck a County vehicle in mud, Commissioner Gibson directed Plaintiff's co-worker, Hector Gomez, to go get that "n---er" out of the mud. *See Exhibit C – Affidavit of Hector Gomez.* When Plaintiff returned to the office, Commissioner Gibson continued with the racial slurs saying that he didn't know all "n---ers" were dumb like that to get stuck. Additionally, Defendants Gibson, Anders and certain of Plaintiff's co-workers told "n---er" jokes in front of Plaintiff. Referring to Plaintiff, Defendant Anders and Kenneth McCay would talk about how much they hated that "n---er" on a routine basis, which hostile, harassing, and racist remarks Defendant Gibson was fully aware of.
>
> 17.     On or about December 13, 2017, during the annual "Operation Santa Claus" event where County employees handed out toys to children in the community, Defendant Anders and co-worker Leopold Gonzalez called Plaintiff "n---er" and/or "bitch ass n---er." One of the parents attending the event witnessed and heard the racist remark, which only served to compound the humiliation and embarrassment inflicted on Plaintiff. The level of hostility and racism had reached the point where Plaintiff did not want to report to work.

*Id.* Davis goes on to describe various incidents involving Anders and Commissioner Gibson, and their repeated use of racist language and conduct.[8] He also supports his

---

[8] The Fifth Circuit recently offered the following string of citations to describe its position on the use of the "N-word" in workplaces:

recollection with a statement from a co-worker, which he filed alongside his First Amended

Complaint. Significantly, Davis also alleges:

> 21. On December 21, 2017, Defendant Anders threatened Plaintiff's life and again referring to Plaintiff as that "n···er." *See Exhibit C.* The notes of Hector Gomez from December 21st, indicate that Anders said he needed someone to kill that "n···er" and throw in a field. *Exhibit H – Handwritten notes of Hector Gomez,*

> *Matagorda County 0129.* Hector Gomez reported the threat to HR. *See Exhibit C.* The HR department contacted Plaintiff and informed him of the threat and directed Plaintiff to immediately go to the Sheriff's Department, which Plaintiff did. *Exhibit I - Incident Report from Matagorda County Sheriff's Office.* Plaintiff's report to the County Sheriff described the racist custom and practice in Precinct 3 and the threat Defendant Anders made on Plaintiff's life. *Exhibit I.* Commissioner Gibson's response to the racist threat was that Defendant Anders had a right of free speech. *See Exhibit C.*

---

"It is beyond question that the use of the '[N-]word []' is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1116 (9th Cir. 2004). This word is "perhaps the most offensive and inflammatory racial slur in English, . . . a word expressive of racial hatred and bigotry." *Swinton v. Potomac Corp.*, 270 F.3d 794, 817 (9th Cir. 2001) (citation omitted) (ellipsis in original); *see also Daso v. Grafton Sch., Inc.*, 181 F. Supp. 2d 485, 493 (D. Md. 2002) ("The [N-] word [] is more than [a] 'mere offensive utterance' . . . . No word in the English language is as odious or loaded with as terrible a history."); *Rodgers v. W-S Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993). (citations omitted) ("Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as [the N-word] [] by a supervisor in the presence of his subordinates.").

*Vess v. MTD Consumer Grp., Inc.*, No. 18-60154, --- F. App'x ---, 2019 WL 168552, at *4 (5th Cir. Jan. 10, 2019).

*Id.* at 10–11.  Davis further alleges that not only did Anders and Commissioner Gibson engage in the offensive, racist conduct, they also encouraged other employees to do the same.  Davis also describes several complaints he made to the County's human resources Department and Commissioner Gibson.  Davis sufficiently describes their awareness of his complaints and the toll the work environment was having on him.

Based on the alleged facts, Davis describes a workplace where his repeated complaints of civil rights violations were followed by no meaningful attempt on the part of the County's human resources department or his two supervisors (Anders and Commissioner Gibson) to remedy the situation.  In other words, Davis has adequately stated a viable hostile work environment claim.

## 2.    Race Discrimination[9]

"To establish a prima facie case of racial discrimination in employment [under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and 42 U.S.C. § 1983], an employee must demonstrate that he (1) is a member of a protected group; (2) was qualified for the

---

[9] The County also argues that Davis has not adequately distinguished between his claims under Section 1981, Section 1983, the Equal Protection Clause, and Title VII.  *See e.g.*, Dkt. 30 at 9 ("Plaintiff appears to state his §1981 claim in addition to, or as a claim distinct from, his section 1983 claim—not as a claim through §1983 with its own distinct elements."); *id.* at 12 ("Plaintiff does not even plead the elements of a §1981 claim and instead only pleads the elements of a Title VII claim."); *id.* at 14–15 ("Plaintiff provides no recitation of any of the elements of an Equal Protection claim, let alone a recitation that reaches beyond 'formulaic' as required to avoid dismissal.").  In advancing its argument, the County quibbles over the way Davis pled his claims. The Court is unconvinced by the County's arguments.  The First Amended Complaint makes sufficiently clear that Davis is alleging his Section 1981 and Equal Protection Clause claims through Section 1983, as required.  Moreover, the Fifth Circuit has noted that any distinction between such claims is negligible because "inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Lauderdale v. Tex. Dep't of Criminal Justice, Inst. Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (quotation marks and citation omitted).

position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Caldwell*, 689 F. App'x at 321 (citation omitted). "With respect to the 'similarly situated employees' requirement, a plaintiff must show that he was treated less favorably than others under nearly identical circumstances." *Morris v. Town of Independence*, 827 F.3d 396, 401 (5th Cir. 2016) (internal quotation marks and citation omitted). It is not necessary, however, for a plaintiff to "make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). Indeed, the Supreme Court has cautioned that "the prima facie case should not be transposed into a rigid pleading standard for discrimination" cases. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 507 (2002). That being said, "[a]llegations related to that prima facie inquiry may nonetheless be helpful in satisfying the general *Iqbal* plausibility standard." *Haskett v. Cont'l Land Res., L.L.C.*, 668 F. App'x 133, 134 (5th Cir. 2016) (citation omitted).

There is no dispute that, as an African American male, Davis is a member of a protected group, and thus satisfies the first element of a race discrimination claim. *See Price v. Fed. Exp. Corp.*, 127 F. Supp. 2d 801, 806 (S.D. Tex. 2001) (Plaintiff "is an African-American male, and thus undeniably a member of a protected group."), *aff'd*, 283 F.3d 715 (5th Cir. 2002).

Davis's allegations also satisfy the second element of his race discrimination claim. Specifically, Davis alleges that he was hired in 2015 as a full-time employee to work on

the Road and Bridge Maintenance crew, and he worked in that role until his termination nearly three years later. Although Davis does not explicitly state that he was qualified for his position, the Court finds that the allegation of Davis's initial hiring and continued employment in the same position sufficiently demonstrates that he was objectively qualified for the position. *See, e.g., Morriss v. Concordia Univ. at Austin*, No. A-05-CA-043 LY, 2006 WL 1347918, at *4 (W.D. Tex. May 11, 2006) (explaining that a "[p]laintiff need only show that []he was *objectively qualified* to hold the position from which []he was terminated in order to satisfy this element of h[is] *prima facie* case").

There is also no dispute that Davis satisfies the third element, as he has alleged that he was placed on probation and later terminated by Commissioner Gibson. *See Shiyan Jiang v. Tex. Comm'n on Envtl. Quality*, 321 F. Supp. 3d 738, 748 (W.D. Tex. 2018) ("There is also no dispute that being placed on probation and being terminated were adverse employment actions."); *Fisher v. Hirsch*, No. H-12-1114, 2013 WL 3899324, at *12 (S.D. Tex. July 29, 2013) ("there is no question that [Plaintiff] suffered adverse employment actions, including probations and, ultimately, termination") (citing *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007) and *Jones v. Flagship Int'l*, 793 F.2d 714, 725 (5th Cir. 1986)).

To satisfy the fourth element of a race discrimination claim, Davis must show that he "was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Caldwell*, 689 F. App'x at 321. Without question, the First Amended Complaint does not allege that a non-African American employee was hired to replace Davis after he was terminated. The County

argues that Davis can only meet the fourth element by alleging that he was treated less favorably than other similarly situated, non-African American employees. *See* Dkt. 30 at 15 (Davis "pleads no facts to support . . . that he was treated differently from similarly situated co-workers."). The Court disagrees that this is a proper basis for dismissal at this stage of the litigation. "[W]ere the Court to dismiss [Davis's] claim because he did not identify similarly situated employees of a different race who were treated differently, it would err 'by improperly substituting an evidentiary standard for a pleading requirement.'" *Darnell v. Milwaukee Elec. Tool Corp.*, No. 3:17-CV-131-GHD-JMV, 2018 WL 542970, at *2 (N.D. Miss. Jan. 24, 2018) (quoting *Raj*, 714 F.3d at 331) (internal quotation marks omitted).

As explained above, Davis has alleged and described a work environment overflowing with racist conduct and attitudes. He alleges that his supervisors are participants in and leaders of creating the hostile work environment. He alleges that Commissioner Gibson put him on probation and terminated his employment, at least in part because of his resistance to the hostile work environment, which included speaking up about the alleged racist conditions. These facts, if true, give rise to a reasonable inference that he was terminated because of his race. *See, e.g., Coleman v. Exxon Chemical Corp.*, 162 F. Supp. 2d 593, 621 (S.D. Tex. 2001) ("A supervisor's repeated use of racial epithets may constitute direct evidence that a contested employment decision was motivated by racial animus."). Whether Davis was treated less favorably than any specific similarly situated, non-African American employees is a detail that can be fleshed out during discovery.

### 3. First Amendment Retaliation

To succeed on his First Amendment retaliation claim, Davis must show that "(1) []he suffered an adverse employment action; (2) []he spoke as a citizen on a matter of public concern; (3) [his] interest in the speech outweighs the government's interest in the efficient provision of public service; and (4) the speech precipitated the adverse employment action." *Rodriguez v. City of Corpus Christi*, 687 F. App'x 386, 389 (5th Cir. 2017) (quoting *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015)). The County argues that Davis's claim fails under the second element because Davis's speech was not made as a citizen on a matter of public concern.

Whether Davis's speech relates to a matter of public concern is a question of law to be resolved by the court. *See Markos v. City of Atlanta*, 364 F.3d 567, 570 (5th Cir. 2004). "An employee's speech may contain an element of personal interest and yet still qualify as speech on a matter of public concern." *Harris v. Victoria Ind. Sch. Dist.*, 168 F.3d 216, 222 (5th Cir. 1999) (citation omitted). "[E]ven a mere scintilla of speech regarding a matter of public concern is sufficient to treat the entire communication as mixed speech." *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 826 (5th Cir. 2007) (citation omitted). "In mixed speech cases, to determine whether speech addresses a matter of public concern, a court must evaluate the 'content, form, and context of a given statement, as revealed by the whole record.'" *Brown v. Leflore Cty.*, 150 F. Supp. 3d 753, 762 (N.D. Miss. 2015) (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)). "In considering content, form, and context, no factor is dispositive." *Bell v. Itawamba Cty. Sch. Bd.*, 799 F.3d 379, 407 (5th Cir. 2015) (internal quotation marks and citation omitted). But context and form are

weighed more heavily than content. *See Teague v. City of Flower Mound*, 179 F.3d 377, 382 (5th Cir. 1999) ("[t]aking these three factors together, and weighing the latter two (context and form) more heavily").

Davis contends that he engaged in protected speech complaining about the fact that he was regularly subjected to race discrimination and race harassment by his supervisors (one of whom is an elected official) and other fellow employees. Davis alleges that he complained in several ways: he complained to human resources; he complained to the County Judge and County Attorney; he complained to the Commissioners Court; and he complained—i.e., filed a criminal complaint—to the County Sheriff. Davis also alleges that he engaged in protected speech concerning Commissioner Gibson's mishandling of County assets contained in the "Kitty Fund" by relaying his concerns to the Texas Rangers. Viewing the facts alleged in the First Amended Complaint in the light most favorable to Davis, the Court cannot now conclude, as argued by the County, that Davis's alleged protected speech was simply based on his individual treatment at work or that all his speech was made in his capacity as an employee. Given the factual allegations detailed in Davis's First Amended Complaint and the many attached documents, the Court finds that Davis has sufficiently alleged that he spoke as a citizen on a matter of public concern.[10]

---

[10] The Court does not close the door on the County re-asserting its argument at a later stage, when the Court will have the benefit of a more fully developed record detailing the content, form, and context of Davis's alleged protected speech.

C.     **PRELIMINARY INJUNCTION**

As part of an injunctive relief claim, Davis asks this Court to enjoin the County and/or Commissioner Gibson from directly or indirectly pressuring, coercing, or otherwise encouraging employees of the County, or other witnesses, to not provide testimony concerning their knowledge of facts and circumstances underlying Davis's claims.   In requesting that the Court dismiss the injunctive relief claim, the County argues that Davis's "request for a preliminary injunction is not ripe, and the injuries for which Plaintiff seeks a preliminary injunction are not claims in the underlying lawsuit."  Dkt. 30 at 8.  To be clear, Davis has not filed an independent motion for preliminary injunction.  Instead, he included an "Application for Preliminary Injunction" section in his First Amended Complaint.  *See* Dkt. 28 at 26–28.

The First Amended Complaint in this case alleges that Commissioner Gibson has pressured a third-party witness not to testify for Davis.  According to Davis, the "County and Commissioner Gibson should not be permitted to pressure those employees who are dependent on the County for their paycheck and livelihood to not testify in any matter, including this lawsuit."  Dkt. 28 at 28.  The First Amended Complaint sets forth the legal requirements for obtaining a preliminary injunction and maintains that Davis can satisfy the four elements a plaintiff must show to obtain injunctive relief: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of irreparable injury if the injunction is not issued; (iii) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (iv) that the grant of an

injunction will not disserve the public interest.  *See Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

This case is at its infancy.  If Davis files a proper motion for preliminary injunction, the Court will entertain evidence and argument to determine whether the facts and law support injunctive relief.  At this juncture, however, the Court is not in a position to determine whether injunctive relief is appropriate.  That inquiry is left for another day.  It is important to remember that in order to survive a motion to dismiss filed pursuant to Rule 12(b)(6), a complaint must simply plead "enough facts to state a claim to relief that is plausible on its face." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).  With this standard in mind, the Court is reluctant to dismiss the injunctive relief claim at this stage of the proceedings.

## D.    *COLORADO RIVER* ABSTENTION

The County next contends that the Court should abstain from exercising jurisdiction over this case based on the *Colorado River* abstention doctrine.  *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).  The *Colorado River* abstention doctrine grants a federal court discretion to avoid duplicative litigation in federal court of a matter more properly decided in parallel litigation in state court.  *See id.* at 817.  Under *Colorado River*, abstention is a narrow exception to a federal court's "virtually unflagging" duty to adjudicate a controversy that is properly before it.  *Id.*  The doctrine "may be applied when: a state proceeding is ongoing and is parallel to the federal proceeding; and, extraordinary circumstances caution against exercising concurrent federal jurisdiction." *Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th

Cir. 2017).  *See also Colo. River*, 424 U.S. at 813 (describing abstention as "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it").  In asking the Court to stay this case, the County points out that Davis asserted violations of the Texas Whistleblower Act in a state court lawsuit he filed against the County in May 2018 in the 122nd District Court of Galveston County, Texas.

In applying the *Colorado River* doctrine, the first issue to address is whether a state lawsuit and a federal lawsuit are "parallel."  *Brown v. Pac Life Ins. Co.*, 462 F.3d 384, 395 n.7 (5th Cir. 2006).  Suits are parallel if they "involv[e] the same parties and the same issues."  *RepublicBank Dall., Nat'l Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987) (internal quotation marks and citation omitted).  "[A] mincing insistence on precise identity" of parties and issues is not required to find that cases are parallel.  *Id.*  "The central inquiry is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case."  *Alpert v. Riley*, No. H-04-3774, 2011 WL 801978, at *12 (S.D. Tex. Feb. 10, 2011) (citations omitted).  *See also TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005) ("The question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state court] litigation will dispose of all claims presented in the federal case."); *Rowley v. Wilson*, 200 F. App'x 274, 275 (5th Cir. 2006) (holding that suits were not parallel for *Colorado River* abstention purposes because some defendants were in the federal case and not present in the state suit, and in the federal case, the plaintiff asserted claims against those defendants not asserted in the state suit).  "[A]ny doubt regarding the parallel nature of the [state court] suit should

be resolved in favor of exercising jurisdiction." *TruServ Corp.*, 419 F.3d at 592 (citation omitted).

If it is determined that the state and federal cases are parallel, the Court must then determine if "exceptional circumstances" warrant abstention by applying six factors: (1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *See Brown*, 462 F.3d at 395.

As a threshold matter, the Court is not persuaded that the state court lawsuit and the federal lawsuit are parallel proceedings. This inquiry is a show stopper since the *Colorado River* abstention doctrine only applies when federal and state cases are parallel. The reason why is two-fold. First, the parties are not the same. The County is the only defendant in the state court lawsuit but the federal case includes Anders and Commissioner Gibson as defendants. Second, the issues are not the same in both cases. The state court lawsuit only alleges violations of the Texas Whistleblower Act. Meanwhile, the federal lawsuit asserts claims brought under Section 1983 for race discrimination, hostile work environment, and First Amendment retaliation. Importantly, the elements for the Texas Whistleblower Act cause of action are separate and distinct from the elements for the race discrimination, hostile work environment, and First Amendment retaliation claims raised in federal court. *See City of Waco v. Lopez*, 259 S.W.3d 147, 154–55 (Tex. 2008) (explaining that the Texas Whistleblower Act and state law protections against employment discrimination "have

distinct approaches to limitations, burdens of proof, damages, caps on damages, and other available remedies . . . the statutes provide irreconcilable and inconsistent regimes for remedying employer retaliation"). Because there is no likelihood that the state litigation will dispose of all claims presented in the federal case, the federal and state lawsuits cannot be considered parallel proceedings. The *Colorado River* abstention doctrine is therefore inapplicable.

Even if the undersigned found that the federal case and state court suit were parallel actions, the next step would be to analyze the *Colorado River* factors. In light of the high standard for abstention, and the lack of "exceptional circumstances" in this case, the Court would not use the *Colorado River* doctrine to abstain from this proceeding. In assessing whether abstention is warranted, the federal court must keep in mind that "the balance [should be] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) (citation omitted). The County acknowledges that the six *Colorado River* factors seem inconclusive and fairly split. According to the County, two factors weigh against abstention, two factors lean to abstention, and two factors are neutral. In such a case, the Supreme Court directs this Court to yield to its "virtually unflagging" obligation to exercise its jurisdiction. *Colo. River*, 424 U.S. at 817. The Court will do just that, rejecting the County's request to abstain.

## ANDERS'S ARGUMENTS

Anders moves to dismiss Davis's claims for several reasons. First, Anders argues that he is entitled to qualified immunity. Second, Anders argues that he cannot be liable for any of Davis's claims under *Sims v. City of Madisonville*. 894 F.3d 632 (5th Cir. 2018).

Finally, Anders argues that Davis cannot state an Equal Protection Clause claim because he "cannot establish that Mr. Anders made Plaintiff suffer from an adverse employment action, [and thus] he cannot establish a *prima faci[e]* case for an equal protection violation based on *discrimination* under Section 1983." Dkt. 32 at 15 (emphasis added).

The Court will address each argument in turn.

## A.    QUALIFIED IMMUNITY

"Qualified immunity shields a government official from liability based on his performance of discretionary functions.   Our two-step qualified[]immunity inquiry determines whether a plaintiff has shown: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Mote v. Walthall*, 902 F.3d 500, 505 (5th Cir. 2018) (internal quotation marks and citations omitted).  Government officials are shielded from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (collecting cases).  "The 'of which a reasonable person would have known' language does not add to the 'clearly established law' requirement because 'a reasonably competent public official should know the law governing his conduct.'" *Arceneaux v. Klein Indep. Sch. Dist.*, No. H-17-3234, 2018 WL 3496737, at *3 (S.D. Tex. July 20, 2018) (quoting *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004)).  "To say that the law was clearly established, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013)

(internal quotation marks and citation omitted).  The burden is on Davis, as the plaintiff, to demonstrate that the relevant law was "clearly established in this area on the date of the incident."  *Lincoln v. Turner*, 874 F.3d 833, 849 (5th Cir. 2017).  Generally, the Court exercises its sound discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand."  *Trent v. Wade*, 776 F.3d 368, 377 (5th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The Court will analyze each claim separately as it relates to the application of the qualified immunity doctrine to Anders.

**First Amendment Retaliation:**  The Court begins with Davis's First Amendment retaliation claim, focusing on the clearly established prong of the qualified immunity framework.  At the time of Davis's termination in February 2018, the law was far from clear on whether someone who was not a final decisionmaker and made a recommendation that led to an individual being terminated could be liable for First Amendment retaliation.  Indeed, in *Sims*, decided in June 2018, the Fifth Circuit expressly recognized that "whether someone who is not a final decisionmaker can be liable for First Amendment retaliation" is "unsettled."  894 F.3d at 638, 641.  To be clear, the First Amended Complaint does not allege that Anders was a final decisionmaker.  To the contrary, Davis specifically alleges that Commissioner Gibson was the final decisionmaker responsible for his placement on probation and termination.  This is important because Anders, as an individual who was not a final decisionmaker, is entitled to qualified immunity unless it can be shown that the law was clearly established that a non-decisionmaker can be held liable for First

Amendment retaliation.  Since that is not the case, Anders is entitled to qualified immunity on Davis's First Amendment retaliation claim.

**Hostile Work Environment**:  Turning to Davis's hostile work environment claim, there is no dispute that the right to be free from a hostile work environment was clearly established under Section 1981 and the Equal Protection Clause long before Davis began his employment with the County in 2015.  *See Johnson*, 911 F.3d at 274 (collecting cases) (recognizing hostile work environment claim under Equal Protection Clause is clearly established); *Ridha v. Tex. A & M Univ. Sys.*, No. 4:08-CV-2814, 2009 WL 1406355, at *6 (S.D. Tex. May 15, 2009) (collecting cases) (recognizing hostile work environment claim under Section 1981 is clearly established).

Because the law surrounding a hostile work environment claim was clearly established, "the Court's analysis of whether [Anders is] entitled to qualified immunity turns on whether [Davis] has established the requisite constitutional violation[s]." *Pree v. Wash. Cty. Bd. of Supervisors*, No. 4:16-CV-122-SA-RP, 2017 WL 473906, at *3 (N.D. Miss. Feb. 3, 2017) (collecting cases).

As described above, Davis has adequately alleged a work environment where his repeated complaints of civil rights violations were followed by no meaningful attempt on the part of human resources or his two supervisors (Anders and Commissioner Gibson) to remedy the situation.  In the Fifth Circuit, "[a] supervisor can be liable for the hostile work environment created by his subordinates 'if that official, by action or inaction, demonstrates a deliberate indifference to a plaintiff's constitutional rights.'" *Johnson*, 911

F.3d at 273–74 (quoting *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997)). Viewing Davis's allegations in the light most favorable to him,

> [t]he . . . allegations of [Anders and Commissioner Gibson's] inaction after learning about the unconstitutional work environment is the definition of deliberate indifference and thus would amount, if proven, to a violation of clearly established law. Of course, they are just allegations at this point, and the evidence may end up showing the opposite. But the allegations are plausible enough to allow [Davis] to engage in the full discovery process and find out if there is evidence to back them up.

*Johnson*, 911 F.3d at 276. For these reasons, Anders is not entitled to qualified immunity from Davis's hostile work environment claim.

**Race Discrimination:** The "constitutional prohibitions against race . . . discrimination are so clearly established that a reasonable person would be aware of these rights." *Martinez v. Val Verde Cty. Hosp.*, 46 F.3d 66, 1995 WL 29271, at *2 (5th Cir. 1995) (internal quotation marks and citation omitted). *See also Blackwell v. Laque*, 275 F. App'x 363, 367 (5th Cir. 2008) (explaining it is "clearly established that the Equal Protection Clause of the Fourteenth Amendment prohibits racial discrimination" in the employment context); *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995) (Section 1981 race discrimination).

As described above, a key element of a race discrimination claim is that the plaintiff suffered some adverse employment action. Importantly, "in the context of § 1983 claims against supervisors, for there to be liability under section 1983, a defendant must have been personally involved in the conduct causing a deprivation of constitutional rights, or there must be a causal connection between the actions of that person and the constitutional right

sought to be redressed." *Fisher v. Dallas Cty.*, 299 F.R.D. 527, 534–35 (N.D. Tex. 2014) (collecting cases) (internal quotation marks and brackets omitted).

The Court finds that Davis has sufficiently alleged facts plausibly suggesting that Anders's conduct, as a supervisor, may well be causally connected to Davis's termination.[11] At this stage of the case, the Court cannot conclude that Anders's conduct did not violate Davis's constitutional right to be free from race discrimination in the workplace. Of course, "sufficiently stating a claim says nothing about a plaintiff's ability to succeed at summary judgment or at trial. That is especially true in the qualified immunity context." *Papin v. Univ. of Miss. Med. Ctr.*, 347 F. Supp. 3d 274, 282–83 (S.D. Miss. Sept. 28, 2018) (internal quotation marks and citation omitted). Nonetheless, at this time, Anders is not entitled to qualified immunity from Davis's race discrimination claim.

**B.** *Sims's* **Application to All Remaining Claims**

Next, Anders argues that he cannot be liable for any of Davis's claims because he was not the final decisionmaker with respect to the adverse employment actions taken against Davis.[12] Anders's argument on this point is based on *Sims*, the same Fifth Circuit case he relied on in arguing the law was not clearly established on whether someone who is not a final decisionmaker can be liable for First Amendment retaliation. *See* 894 F.3d 632.

---

[11] For this same reason, Anders's third argument regarding the Equal Protection Clause and race discrimination fails.

[12] To be clear, at this point, the Court has found that Anders is shielded by qualified immunity from the race discrimination and First Amendment retaliation claims. Thus, the only claim remaining against Anders is Davis's hostile work environment claim.

In *Sims*, the Fifth Circuit held that "[i]f an individual defendant's animus against a coworker's exercise of First Amendment rights is a link in the causal chain that leads to a plaintiff's firing, the individual may be liable even if she is not the final decisionmaker." *Id.* at 639. How does one determine if a particular act was a "causal link" to the termination? *Id.* at 641. According to the Fifth Circuit, "individual liability for a government official who violates constitutional rights, including First Amendment ones, turns on traditional principles of 'but-for' causation." *Id.* at 639 (citations omitted).

In the Court's view, Davis's allegations of causation and damages are, at this time, sufficient to withstand a motion to dismiss. Whether Davis can establish "but-for" causation is a question better left for summary judgment when the parties can submit evidence and argument as it relates to the specific facts of this case.

## COMMISSIONER GIBSON'S ARGUMENTS

Commissioner Gibson moves to dismiss Davis's claims on several grounds. He first argues that Davis failed to plead a prima facie First Amendment retaliation claim. Next, Commissioner Gibson contends that controlling Fifth Circuit precedent shields him from Davis's race discrimination and hostile work environment claims brought under Section 1981. Third, he argues that Davis failed to state a hostile work environment claim under the Equal Protection Clause. Lastly, Commissioner Gibson contends that he is shielded by qualified immunity from all of Davis's claims.

The Court discusses each argument.[13]

---

[13] Commissioner Gibson also argues that probation is not an adverse employment decision. As addressed above with respect to Anders's qualified immunity arguments, the Court has found

## A.     FIRST AMENDMENT RETALIATION

Commissioner Gibson argues that Davis's speech was not made as a citizen on a matter of public concern.  As discussed above, the County advanced the same argument, and the Court has already determined that Davis has sufficiently alleged that he spoke as a citizen on a matter of public concern.  Thus, Commissioner Gibson's argument fails for the same reasons discussed more fully above as to the County.

## B.     RACE DISCRIMINATION AND HOSTILE WORK ENVIRONMENT (SECTION 1981)

Commissioner Gibson contends that he cannot be sued in his individual capacity under "Section 1981 via Section 1983."  Dkt. 31 at 4.  This argument has merit.  In *Oden v. Oktibbeha County*, the Fifth Circuit dismissed a Section 1981 claim that had been brought against a sheriff, in his individual capacity, that stemmed from his "official decision" about whom to promote.  246 F.3d 458, 464 (5th Cir. 2001).  In doing so, the Fifth Circuit made clear that Section 1981 does not impose "personal liability on elected officials for discrimination in the terms and conditions of local government employment contracts."  *Id.* (citation omitted).  Courts have acknowledged *Oden* as controlling authority in cases involving Section 1981 claims brought against elected government officials in their individual capacities for municipal employment decisions.  *See Newsome v. Harris Cty.*, No. H-12-1938, 2013 WL 285543, at *8 (S.D. Tex. Jan. 24, 2013) ("the Harris County Constable . . . is an elected official, and therefore not liable in her individual capacity under

---

authority supporting the proposition that probation can constitute an adverse employment decision. *See Shiyan Jiang*, 321 F. Supp. 3d at 748 ("There is also no dispute that being placed on probation and being terminated were adverse employment actions.").

§ 1983 for discrimination in the terms and conditions of a local government employment contract") (citing *Oden*, 246 F.3d at 464); *Glaskox v. Harris Cty.*, No. H-11-1699, 2012 WL 12877652, at *4 (S.D. Tex. Sept. 7, 2012) ("Under *Oden*, then, Constable Jones may not be held liable under § 1981 in his individual capacity.") (citing *Oden*, 246 F.3d at 464–65).

In Matagorda County, County Commissioners are elected officials. In the First Amended Complaint, Davis specifically alleges that Commissioner Gibson is "the elected County Commissioner for Precinct 3 and Department Head of Precinct 3." Dkt. 28 at 6. It was in his capacity as County Commissioner that Gibson decided to terminate Davis's employment with Matagorda County Precinct 3. Under *Oden*, then, Commissioner Gibson may not be held liable under Section 1981 via Section 1983 in his individual capacity. *See* 246 F.3d at 464. Thus, Davis's race discrimination and hostile work environment claims under Section 1981 against Commissioner Gibson should be dismissed for failure to state a claim.

## C. HOSTILE WORK ENVIRONMENT (EQUAL PROTECTION CLAUSE)

Commissioner Gibson, like Anders, argues that Davis's hostile work environment claim based on the Equal Protection Clause should be dismissed because the "the Fifth Circuit does not recognize a hostile environment claim under the Equal Protection Clause . . . ." Dkt. 37 at 1 (citing *Fields v. Stephen F. Austin State Univ.*, 611 F. App'x 830, 833 n.5 (5th Cir. 2015)). Commissioner Gibson is mistaken. As explained above, in December 2018 the Fifth Circuit recognized that hostile work environment claims under Equal Protection Clause have been clearly established for quite some time in this Circuit. *See*

*Johnson*, 911 F.3d at 274 (recognizing hostile work environment claim under Equal Protection Clause is clearly established) (collecting cases).

## D.    QUALIFIED IMMUNITY

Last, but not least, Commissioner Gibson contends that he is shielded by qualified immunity from all of Davis's claims. Before turning to his specific arguments, the Court will recap its earlier determinations because the Court will only consider qualified immunity as to claims that have not already been recommended for dismissal due to Davis's failure to state a claim.

The Court has already recommended for dismissal the following claims brought against Commissioner Gibson: (1) race discrimination under Section 1981; and (2) hostile work environment under Section 1981. Thus, at this point, the claims remaining against Commissioner Gibson are race discrimination under the Equal Protection Clause, hostile work environment under the Equal Protection Clause, and First Amendment retaliation.

**Race Discrimination (Equal Protection Clause):**  Commissioner Gibson does not specifically assert that qualified immunity should shield him from Davis's race discrimination claim brought under the Equal Protection Clause. The only argument that comes close Commissioner Gibson's general assertion that he "is entitled to qualified immunity with respect to Plaintiff's Section . . . 1983 claims because it logically follows that Plaintiff cannot allege a violation of a clearly established right where he fails to allege a viable claim in the first instance." Dkt. 31 at 10–11 (citation omitted). As explained above as to the County, Davis has adequately stated a race discrimination claim. Commissioner Gibson's alleged conduct and involvement sufficiently demonstrates his

potential individual liability.  The Court, therefore, declines to grant Commissioner Gibson

qualified immunity on the race discrimination claim at this time.

**Hostile Work Environment (Equal Protection Clause):**   Regarding Davis's

hostile work environment claim under the Equal Protection Clause, Commissioner Gibson

argues that Davis has not alleged sufficient facts to state a viable claim.   Simply put,

Commissioner Gibson contends that even if he used racial slurs, without an additional

allegation of harassment or some other conduct that deprives Davis of established rights,

Davis has not stated a claim.  The Court disagrees.  As explained above with respect to

Anders's qualified immunity arguments, Davis has sufficiently alleged that his workplace

was permeated with discriminatory intimidation, ridicule, and insult, and it is sufficiently

severe or pervasive to alter the conditions of his employment.   Davis alleges that

Commissioner Gibson participated in creating the hostile work environment and was

deliberately indifferent to remedying the problem.  Based on these allegations, which are

more fully discussed above, the Court finds Commissioner Gibson is not entitled to

qualified immunity from Davis's hostile work environment claim.

**First Amendment Retaliation:**   Lastly, Commissioner Gibson makes several

arguments about Davis's First Amendment retaliation claim.  First, he argues that qualified

immunity should be granted because Davis failed to state a claim.  This argument fails

because the Court has found that, at this stage, Davis has stated a claim.  Next, he argues

that "it was not clearly established that Gibson could be individually liable for First

Amendment retaliation where plaintiff has failed to allege facts that Gibson was aware of

the content of the statements Plaintiff allegedly made to the Texas Rangers."  Dkt. 31 at

11.[14] This argument fails because it is predicated on an interpretation of the First Amended Complaint that is not in the light most favorable to Davis. The First Amended Complaint specifically alleges that Commissioner Gibson informed Davis that his termination was related to him speaking with the Texas Rangers. At this stage, a reasonable inference from such an allegation is that Commissioner Gibson was aware of the content of Davis's discussion with the Texas Rangers. Finally, Commissioner Gibson argues he "is entitled to qualified immunity as to Plaintiff's complaint shared with the Texas Rangers because it was not clearly established that such communication, made pursuant to a directive of Plaintiff's employer, was speech on a matter of public concern protected by the First Amendment." Dkt. 31 at 12. The Court is not exactly sure where Commissioner Gibson derived the fact that Davis's speech was "made pursuant to a directive of Plaintiff's employer." *Id.* He offers no citation for this factual proposition. Again, the Court declines to grant qualified immunity, at this stage. The Court will certainly entertain Commissioner Gibson's reassertion of the qualified immunity defense as this case progresses.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court **RECOMMENDS** that:

- Defendant Matagorda County's Motion to Dismiss (Dkt. 30) be **DENIED**; County Commissioner James Gibson's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 31) be **GRANTED in part** and **DENIED in part**; Defendant, William David Anders', *in his official and individual capacities*, Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6) and Based on

---

[14] Commissioner Gibson also attempts to make an argument based on an alleged admission that Davis made in "Dkt. 28 at p. 52." Dkt. 31 at 11. The Court has reviewed the First Amended Complaint to locate the purported admission. The First Amended Complaint (Dkt. 28) does not contain a page 52 and paragraph 52 does not contain any admission.

Qualified Immunity (Dkt. 32) be **GRANTED in part** and **DENIED in part**; and Defendants' Joint Motion to Stay Discovery (Dkt. 33) be **DENIED as moot**.

- Specifically, (i) the First Amendment retaliation claim brought against Anders be dismissed because he is entitled to qualified immunity; (ii) the race discrimination claim brought against Commissioner Gibson under Section 1981 be dismissed; (iii) the hostile work environment claim brought against Commissioner Gibson under Section 1981 be dismissed; (iv) Defendants' Joint Motion to Stay Discovery be denied as moot; and (v) in all other respects, Defendants' motions to dismiss be denied.

- In the interest of clarity, the following claims will survive this recommendation: (1) all claims against the County; (2) hostile work environment (Section 1981 and Equal Protection Clause) against Anders (individual capacity); (3) race discrimination (Section 1981 and Equal Protection Clause) against Anders (individual capacity); (4) race discrimination against Commissioner Gibson (Equal Protection Clause) (individual capacity); (5) hostile work environment against Commissioner Gibson (Equal Protection Clause) (individual capacity); and (6) First Amendment retaliation against Commissioner Gibson (individual capacity).

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 4th day of March, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE